# United States Court of Appeals

*for the*

# Seventh Circuit

Case No. 26-1628

CHARLES GREENWOOD,

*Plaintiff-Appellee,*

– v. –

EXPRESS TECHNOLOGIES LTD.,

*Defendant-Appellant.*

ON APPEAL FROM AN ORDER ENTERED IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION, CASE NO. 1:25-cv-08121, HONORABLE JORGE L. ALONSO, JUDGE PRESIDING

## BRIEF AND APPENDIX OF DEFENDANT-APPELLANT


LAURI A. MAZZUCHETTI
RYAN M. DUNN
KELLEY DRYE & WARREN LLP
*Attorneys for Defendant-Appellant*
7 Giralda Farms, Suite 340
Madison, New Jersey 07940
(973) 503-5900



CP COUNSEL PRESS (800) 4-APPEAL • (392879)

Save As Clear Form

Case: 26-1628 Document: 8 Filed: 05/07/2026 Pages: 2

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 26-1628

Short Caption: Greenwood v. Express Technologies Ltd.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Express Technologies Ltd.

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Quinn Emanuel Urquhart & Sullivan, LLP;

Kelley Drye & Warren, LLP

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

See Exhibit A, attached

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ Lauri A. Mazzuchetti Date: 5/7/2026

Attorney's Printed Name: Lauri A. Mazzuchetti

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☑ **No** ☐

Address: 7 Giralda Farms Suite 340, Madison, NJ 07940

Phone Number: (973) 503-5910 Fax Number: N/A

E-Mail Address: lmazzuchetti@kelleydrye.com

rev. 12/19 AK

# EXHIBIT A

ANSWER TO CIRCUIT RULE 26.1 DISCLOSURE STATEMENT QUESTION (3) i):

All parent corporations of Defendant-Appellant Express Technologies, Ltd. are listed as follows:

1) Network Guard Pte. Ltd. (private entity and sole parent/owner of Express Technologies, Ltd.);

2) Kape Technologies, PLC (private entity and sole parent/owner of Network Guard Pte. Ltd.).

DATED: Madison, NJ
May 7, 2026

Respectfully submitted,

By: */s/ Lauri A. Mazzuchetti*

Lauri A. Mazzuchetti
Ryan M. Dunn
**KELLEY DRYE & WARREN LLP**
7 Giralda Farms
Madison, New Jersey 07940
Tel: (973) 503-5900
Fax: (973) 503-5950
lmazzuchetti@kelleydrye.com
rdunn@kelleydrye.com

*Counsel for Defendant-Appellant Express Technologies, Ltd.*

Save As Clear Form



**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 26-1628

Short Caption: Greenwood v. Express Technologies Ltd.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Express Technologies Ltd.

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Quinn Emanuel Urquhart & Sullivan, LLP;

Kelley Drye & Warren, LLP

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

See Exhibit A, attached

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ Ryan M. Dunn Date: 5/7/2026

Attorney's Printed Name: Ryan M. Dunn

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☐ **No** ☑

Address: 7 Giralda Farms Suite 340, Madison, NJ 07940

Phone Number: (973) 503-5943 Fax Number: N/A

E-Mail Address: rdunn@kelleydrye.com

rev. 12/19 AK

**EXHIBIT A**

ANSWER TO CIRCUIT RULE 26.1 DISCLOSURE STATEMENT QUESTION (3) i):

All parent corporations of Defendant-Appellant Express Technologies, Ltd. are listed as follows:

1) Network Guard Pte. Ltd. (private entity and sole parent/owner of Express Technologies, Ltd.);

2) Kape Technologies, PLC (private entity and sole parent/owner of Network Guard Pte. Ltd.).

DATED: Madison, NJ
May 7, 2026

Respectfully submitted,

By: */s/ Ryan M. Dunn*

Lauri A. Mazzuchetti
Ryan M. Dunn
**KELLEY DRYE & WARREN LLP**
7 Giralda Farms
Madison, New Jersey 07940
Tel: (973) 503-5900
Fax: (973) 503-5950
lmazzuchetti@kelleydrye.com
rdunn@kelleydrye.com

*Counsel for Defendant-Appellant Express Technologies, Ltd.*

**TABLE OF CONTENTS**

**Page**

CIRCUIT RULE 26.1 DISCLOSURE STATEMENTS ........ i

TABLE OF AUTHORITIES ........ vii

STATEMENT REGARDING ORAL ARGUMENT ........ x

INTRODUCTION ........ 1

JURISDICTIONAL STATEMENT ........ 3

STATEMENT OF ISSUES ........ 4

STATEMENT OF THE CASE ........ 5

A. Legal background ........ 5

B. Factual and procedural background ........ 6

1. Plaintiff Agreed to ExpressVPN's May 2022 Terms, Which Included an Agreement to Arbitrate ........ 6

2. Plaintiff filed a Putative Class Action Challenging ExpressVPN's Subscription Disclosures ........ 10

3. Plaintiff Offered No Evidence That He Agreed to the September 2022 Terms ........ 11

4. The District Court Denied Arbitration Based Solely on a Later, Disputed Modification ........ 12

SUMMARY OF ARGUMENT ........ 15

ARGUMENT ........ 17

I. STANDARD OF REVIEW ........ 17

II. THE DISTRICT COURT ERRED BY REFUSING TO COMPEL ARBITRATION ON THE BASIS OF THE SEPTEMBER 2022 TERMS ........ 17

A. Plaintiff Presented No Evidence That He Agreed to Such Terms ........ 19

B. The Arbitration Clause in the May 2022 Terms Survived Any Subsequent Modification ............................22

C. The District Court's Decision Cannot Be Reconciled with *Millar*, Which Involved Interpretation of Identical Online Terms of Service .........25

III. In the Alternative, the District Court Lacked Authority to Decide Whether the September 2022 Terms Were Enforceable Because the Parties Delegated That Question to the Arbitrator ..............................................................26

CONCLUSION ..........................................................................................30

## TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Am. Exp. Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013) .......... 5

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .......... 5

*Barclay v. Icon Health & Fitness, Inc.*,
550 F. Supp. 3d 710 (D. Minn. 2021) .......... 21

*ChampionsWorld, LLC v. U.S. Soccer Fed'n, Inc.*,
487 F. Supp. 2d 980 (N.D. Ill. 2007) .......... 24

*Coinbase, Inc. v. Suski*,
602 U.S. 143 (2024) .......... 27, 28

*DIRECTV, Inc. v. Imburgia*,
577 U.S. 47 (2015) .......... 5

*Domer v. Menard, Inc.*,
116 F.4th 686 (7th Cir. 2024) .......... 18

*Edwards v. TikTok, Inc.*,
804 F. Supp. 3d 1049 (C.D. Cal. 2025) .......... 23

*Friedel v. City of Madison*,
832 F.2d 965 (7th Cir. 1987) .......... 21

*Hanc & Brubaker Holdings v. NXT LVL Servs., LLC*,
2023 WL 1069854 (N.D. Ill. Jan. 27, 2023) .......... 24

*Harris v. W6LS, Inc.*,
171 F.4th 957 (7th Cir. 2026) .......... 27

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019) .......... 6

*K.F.C. v. Snap Inc.*,
29 F.4th 835 (7th Cir. 2022) .......... 6

*Kass v. PayPal Inc.*,
75 F.4th 693 (7th Cir. 2023) .....17

*Kindred Nursing Ctrs. L. P. v. Clark*,
581 U.S. 246 (2017) .....5

*Lamps Plus, Inc. v. Varela*,
587 U.S. 176 (2019) .....6

*Matter of Morris Paint & Varnish Co.*,
773 F.2d 130 (7th Cir. 1985) ..... 18, 20

*Millar v. Express Techs. Ltd.*,
2025 WL 4061252 (C.D. Cal. Nov. 25, 2025) ..... *passim*

*Mitze v. Colvin*,
782 F.3d 879 (7th Cir. 2015) .....20

*Morgan v. Sundance, Inc.*,
596 U.S. 411 (2022) .....5

*Nandorf, Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*,
410 F. Supp. 3d 882 (N.D. Ill. 2019) .....27

*Patten Sec. Corp. v. Diamond Greyhound & Genetics, Inc.*,
819 F.2d 400 (3d Cir. 1987) .....23

*Pilon v. Discovery Commc'ns, LLC*,
769 F. Supp. 3d 273 (S.D.N.Y. 2025) .....22

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
388 U.S. 395 (1967) .....23

*Rose v. Mercedes-Benz USA, LLC*,
167 F.4th 975 (7th Cir. 2026) ..... 17, 18, 19, 20

*Saeedy v. Microsoft Corp.*,
757 F. Supp. 3d 1172 (W.D. Wash. 2024) .....21

*Schroder v. Teufel*,
2017 WL 5569758 (N.D. Ill. Nov. 20, 2017) .....28

*Tinder v. Pinkerton Sec.*,
305 F.3d 728 (7th Cir. 2002) ..... *passim*

*United Steel v. TriMas Corp.*,
531 F.3d 531 (7th Cir. 2008) ........................................................ 23, 24

*ValuePart, Inc. v. Farquhar*,
2014 WL 4923179 (N.D. Ill. Sept. 29, 2014) ..................................................24

*Wilhelm v. BAM Trading Servs.*,
2024 WL 2274326 (N.D. Ill. May 20, 2024) ...................................................21

**Statutes & Other Authorities:**

9 U.S.C. § 2.......................................................................................................5

9 U.S.C. § 16(a)(1) ..............................................................................................4

28 U.S.C. § 1332(d) ............................................................................................3

28 U.S.C. § 1332(d)(2).........................................................................................3

28 U.S.C. § 1332(d)(2)(C) ..................................................................................4

Fed. R. App. P. 4(a)(1)(A) ...................................................................................4

Fed. R. Civ. P. 12(b)(6) ......................................................................................14

*International Dispute Resolution Procedures*, International Centre for
Dispute Resolution 28 (March 1, 2021) ..................................................... 9, 27

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellant Express Technologies Ltd. ("ExpressVPN") submits this statement regarding oral argument in accordance with Federal Rule of Appellate Procedure 34(a) and Circuit Rule 34(f). This appeal presents a straightforward application of settled precedents interpreting the Federal Arbitration Act, including the standard governing a district court's review of a motion to compel arbitration. Thus, ExpressVPN respectfully submits that oral argument is unnecessary.

## INTRODUCTION

This appeal presents a straightforward question: can a district court refuse to enforce an undisputed arbitration agreement based on a later modification as to which there is no evidence of assent? The answer is plain: it cannot.

Plaintiff-Appellee Charles Greenwood ("Plaintiff") purchased a subscription from ExpressVPN in May 2022, agreeing to Terms of Service (the "May 2022 Terms") that contained a mandatory arbitration clause and incorporated the International Centre for Dispute Resolution rules ("ICDR Rules"). The ICDR Rules expressly delegate questions of arbitrability, including enforceability, to the arbitrator. In mid-September 2022, ExpressVPN updated its Terms of Service (the "September 2022 Terms"[1]) to a version that did not mention arbitration. But the record is devoid of any evidence that Plaintiff assented to the September 2022 Terms—and, in fact, Plaintiff himself *disclaimed* any such assent.

---

[1] The Terms of Service update occurred on September 15, 2022. (D. Ct. ECF No. 52-1 ¶3.) Plaintiff and the district court imprecisely referred to the terms of service update as having occurred in October 2022. Those terms are referred to accurately herein as the "September 2022 Terms."

Despite finding that Plaintiff indisputably assented to the May 2022 Terms and the arbitration agreement therein, and despite Plaintiff's repudiation of the September 2022 Terms, the district court denied ExpressVPN's motion to compel arbitration. In approximately one page of analysis, the district court presumed—without any evidentiary support—that Plaintiff was bound by the September 2022 Terms. The district court concluded that a forum selection clause in those terms superseded the arbitration clause. The court never addressed whether Plaintiff had notice of, or took any affirmative action that could constitute assent to, the September 2022 Terms, and indeed, Plaintiff did not present any such evidence. Nor did the district court address whether the parties' express delegation of arbitrability questions to the arbitrator, including resolution of the potential impact, if any, of the modification.

The district court's decision was wrong for three independent reasons. *First*, the court erred by presuming Plaintiff's assent to the September 2022 Terms in the absence of any supporting evidence, contrary to this Court's precedent that required Plaintiff to proffer specific evidence to defeat a *prima facie* showing of an agreement to arbitrate. *Second*, even if the September 2022 Terms applied, the arbitration clause survived the modification because

the September 2022 Terms contained no clear and specific waiver of the right to arbitrate, and the forum selection clause can be harmonized with the arbitration clause under settled federal law. *Third*, the district court should not have reached the modification question at all, because under the May 2022 Terms, the parties specifically delegated issues of arbitrability—including the enforceability of the arbitration clause—to the arbitrator.

Indeed, a district court in California, under materially identical circumstances, compelled arbitration of a dispute involving a similarly-situated plaintiff attempting to sue ExpressVPN. This Court should reverse and remand with instructions to compel arbitration.

## JURISDICTIONAL STATEMENT

The district court exercised subject-matter jurisdiction over this case under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Plaintiff filed a putative class action seeking to represent more than 100 members and alleging an aggregate amount in controversy exceeding $5,000,000. *Id.* § (d)(2). Plaintiff also pled that the parties satisfied CAFA's minimal-diversity requirement. (Compl., D. Ct. ECF No. 1 ¶17.) ExpressVPN is a foreign entity incorporated and maintaining its principal place of business in the British

Virgin Islands, and Plaintiff is a citizen of Illinois. *See* 28 U.S.C. § 1332(d)(2)(C).

This Court has appellate jurisdiction pursuant to 9 U.S.C. § 16(a)(1) of the Federal Arbitration Act ("FAA"), which provides for an immediate appeal as of right from an order denying a motion to compel arbitration. The district court entered its order denying ExpressVPN's motion to compel arbitration (the "Order Denying Arbitration") on March 30, 2026. (A-7.) ExpressVPN timely filed its Notice of Appeal on March 31, 2026. (D. Ct. ECF No. 59); *see* Fed. R. App. P. 4(a)(1)(A).

## STATEMENT OF ISSUES

**1.** Did the district court err by presuming Plaintiff's assent to the September 2022 Terms without any supporting evidence and denying ExpressVPN's motion to compel arbitration on that basis?

**2.** Did the arbitration clause in the May 2022 Terms survived the subsequent modification, where the September 2022 Terms contained no clear and specific waiver of the arbitration provision, and the forum-selection clause can be harmonized with that provision?

**3.** Did the district court lack authority to resolve the modification question because the parties delegated issues of arbitrability—including the enforceability of the arbitration agreement —to the arbitrator?

## STATEMENT OF THE CASE

### A. Legal background

Congress enacted the Federal Arbitration Act ("FAA") in response to "widespread judicial hostility to arbitration." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 232 (2013). Section 2 of the FAA provides:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract[ or] transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Thus, arbitration is a matter of contract, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351 (2011), and the FAA "requires courts to place arbitration agreements 'on equal footing with all other contracts.'" *Kindred Nursing Ctrs. L. P. v. Clark*, 581 U.S. 246, 248 (2017), quoting *DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 48 (2015). That key principle "make[s] 'arbitration agreements as enforceable as other contracts, but not more so.'" *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (internal quotation omitted).

Courts must enforce arbitration agreements according to their terms, *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 183 (2019), including terms delegating issues to an arbitrator, *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019). For instance, although a court must always decide whether the parties agreed to arbitrate, parties "may delegate *all other issues* . . . to the arbitrator," *K.F.C. v. Snap Inc.*, 29 F.4th 835, 837 (7th Cir. 2022) (emphasis added), and "a court possesses no power" to "override the contract," *Henry Schein*, 586 U.S. at 68.

### B. Factual and procedural background

#### 1. Plaintiff Agreed to ExpressVPN's May 2022 Terms, Which Included an Agreement to Arbitrate

ExpressVPN, a British Virgin Islands corporation, sells virtual private network ("VPN") services to consumers. (SA-1.) VPN services allow users to route internet activity through an encrypted connection, protecting user devices and sensitive information from interception. (SA-2) Businesses, institutions, and government agencies routinely use VPNs to protect confidential data, and commercial VPN providers such as ExpressVPN offer the same benefits to individuals. (*Id.*) For typical customers, VPN services

are configured at account activation and work entirely in the background thereafter. (SA-2–3.)

On or about May 23, 2022, Plaintiff purchased an ExpressVPN subscription through ExpressVPN's website. (Compl., D. Ct. ECF No. 1 ¶91; SA-2–3, ¶12.) The checkout page with which Plaintiff engaged to complete his purchase had multiple clear and conspicuous disclosures that the subscription would automatically renew "every month," "every 6 months," or "every 12 months" according to the user's selection at the top of the screen, with a further "billed every [#] months" notice appearing immediately above the "Join Now" button required to complete the purchase. (SA-6.)




(*Id.*)

In addition, the "Join Now" button was positioned immediately above the statement: "By submitting this form, you agree to our <u>**Terms of Service**</u>." (*Id.*) The phrase "Terms of Service" appeared in bright green, underlined, hyperlinked text and linked directly to ExpressVPN's Terms of Service ("Terms"). (*Id.*)

Complementing the checkout disclosures, the May 2022 Terms expressly provided that subscriptions "renew automatically by default at the completion of the billing term" and that customers could disable automatic renewal via their account settings or customer support request. (SA-10.) Thus, customers who deployed the VPN for enhanced security and privacy on a hands-off basis could avoid an unintentional lapse of services at the end of their term or choose to have the subscription to terminate.

The May 2022 Terms also contained a mandatory arbitration provision requiring that "[a]ll disputes arising out of or relating to this Agreement or the use of the Site or Services shall be finally settled under the Rules of Arbitration ('Rules') of the International Centre for Dispute Resolution (ICDR)." (SA-17–18.) At all relevant times, the ICDR Rules provided that objections concerning arbitrability—including disputes regarding the "existence, scope, or validity of the arbitration agreement"—are reserved for the arbitrator to decide. *International Dispute Resolution Procedures*, International Centre for Dispute Resolution at 28 (March 1, 2021).

When ExpressVPN later amended its Terms of Service on September 15, 2022, the update did not contain the arbitration clause (or any mention of arbitration). (*See* SA-100.) The record contains no evidence that Plaintiff ever

had notice of, or agreed to, the September 2022 Terms. In fact, Plaintiff affirmatively disputed that he did so. (Pl.'s Opp. Br. to Mot. to Compel Arb., D. Ct. ECF No. 48 at 8.)

### 2. Plaintiff filed a Putative Class Action Challenging ExpressVPN's Subscription Disclosures

On July 16, 2025, Plaintiff filed a putative class action complaint in the United States District Court for the Northern District of Illinois, alleging that ExpressVPN violated the Illinois Automatic Contract Renewal Act and the Illinois Consumer Fraud and Deceptive Business Practices Act, and was also liable under the common law, by purportedly failing to "fully disclose the terms of its automatic renewal programs." (Compl., D. Ct. ECF No. 1 ¶¶1, 29.) Plaintiff filed a First Amended Complaint on September 29, 2025. (See D. Ct. ECF No. 18.) After ExpressVPN moved to dismiss and, in the alternative, to compel arbitration, Plaintiff filed a Second Amended Complaint on November 29, 2025. (See D. Ct. ECF No. 34.) The Second Amended Complaint is the operative complaint (the "Complaint"). Only four days earlier, the district court in the Central District of California compelled another plaintiff, Timothy Millar, to arbitration with ExpressVPN, based on Mr. Millar's assent to the same terms of service as the

Plaintiff below. *See Millar v. Express Techs. Ltd.*, 2025 WL 4061252, at *1 (C.D. Cal. Nov. 25, 2025).

### 3. Plaintiff Offered No Evidence That He Agreed to the September 2022 Terms

On January 16, 2026, ExpressVPN again moved to dismiss Plaintiff's Complaint and, in the alternative, to compel arbitration. In support of arbitration, ExpressVPN submitted sworn testimony describing the online checkout flow Plaintiff encountered in May 2022 and establishing his assent to the May 2022 Terms. (SA-1–4.) Plaintiff submitted no evidence rebutting that showing of his assent to the May 2022 Terms. Rather, Plaintiff disavowed agreeing to *any* version of ExpressVPN's Terms. (Pl.'s Opp. Br., D. Ct. ECF No. 48 at 8.) He did not meaningfully contest that his claims fell within the scope of the May 2022 arbitration agreement or that the agreement clearly and unmistakably delegated issues of arbitrability to the arbitrator.

Instead, Plaintiff argued that the arbitration clause in the May 2022 Terms was unenforceable because a later amended Terms contained no arbitration clause, and, instead, contained a forum selection clause designating the British Virgin Islands. The May 2022 modification clause

provided that continued use of ExpressVPN's "Services, Content, Site, Apps, or Software" after a modification constituted acceptance of revised terms. (SA-8.) Plaintiff asserted—not through any declaration or admissible evidence, but solely based on the unverified allegations in his Complaint and in attorney argument—that he used ExpressVPN's website or app after September 2022 to attempt to cancel his subscription and therefore became subject to the revised Terms. (Pl.'s Opp. Br., D. Ct. ECF No. 48 at 8.) Those assertions were never submitted in evidentiary form and should not be considered. Additionally, Plaintiff has not even argued, much less offered evidence, that he had notice of the update.

#### 4. The District Court Denied Arbitration Based Solely on a Later, Disputed Modification

After argument on March 26, 2026, the district court denied ExpressVPN's motion to compel arbitration. In doing so, the district court first correctly held that Plaintiff assented to the May 2022 Terms, including their mandatory arbitration provision, and noted that Plaintiff "fail[ed] to substantively contest" that assent. (A-4.) The district court relied on *Millar v. Express Technologies Ltd.*, a similar federal suit in California, in which the

district court enforced arbitration based on the same ExpressVPN checkout flow. *Id.* at 5 (citing *Millar*, 2025 WL 4061252, at *11 (C.D. Cal. Nov. 25, 2025)).

Despite finding that Plaintiff agreed to the May 2022 Terms—and despite the complete absence of any evidence that he ever assented to anything else—the district court nonetheless concluded, departing from *Millar*, that arbitration was unavailable because ExpressVPN later "updated its Terms . . . and removed the arbitration provision." (A-5.) That conclusion rested on no factual finding that Plaintiff ever accepted or assented to the September 2022 Terms, no analysis of ExpressVPN's delegation clause, and no engagement with ExpressVPN's argument that any purported modification was ineffective as to Plaintiff. It was a one-page detour from the court's own threshold holding and from *Millar*, which enforced the same May 2022 arbitration clause against a subscriber who—like Plaintiff—signed up under the May 2022 Terms and alleged that his subscription autorenewed after the September 2022 update. (A-5–6.) And critically, Plaintiff submitted no evidence whatsoever that he received notice of, viewed, continued using the service after, or engaged in any conduct that could constitute assent to the September 2022 Terms.

The district court also did not even address ExpressVPN's argument that questions of modification, enforceability, and applicability were delegated to the arbitrator under the May 2022 Terms to which Plaintiff expressly agreed. And the court further did not address ExpressVPN's argument that any purported modification was otherwise ineffective as to Plaintiff.

Having concluded that the September 2022 Terms applied, the district court declined to reach ExpressVPN's Rule 12(b)(6) arguments. Instead, the court noted that the September 2022 Terms contained a British Virgin Islands forum-selection clause, which Plaintiff himself invoked, and ordered supplemental briefing on that clause. (A-6.)

The next day, ExpressVPN filed a notice of appeal from the denial of its motion to compel arbitration. (*See* D. Ct. ECF No. 59.) That interlocutory appeal automatically stayed all district court proceedings, including the ordered forum-selection briefing, pending resolution of this appeal. Accordingly, all proceedings below—including briefing concerning the forum selection clause—are stayed pending resolution of this interlocutory appeal.

## SUMMARY OF ARGUMENT

This Court should find that the district court erred in denying ExpressVPN's motion to compel arbitration for any one of three independent reasons.

*First*, the district court erred by presuming Plaintiff's assent to the September 2022 Terms without any supporting evidence. It is undisputed that, by completing checkout, Plaintiff assented to the May 2022 Terms, which contained a mandatory arbitration clause. Plaintiff submitted no evidence rebutting that showing or establishing assent to the September 2022 Terms—he offered only a conclusory denial in a legal brief and references to the unsubstantiated allegations in his Complaint. Under this Court's precedent, the non-movant must identify specific evidence in the record demonstrating a material factual dispute to defeat a motion to compel arbitration; general denials are insufficient. Because Plaintiff failed to meet that burden, the district court should have compelled arbitration under the May 2022 Terms.

*Second*, even if the September 2022 Terms applied, the arbitration clause survived the modification. Under federal law, an arbitration clause is separable from the contract in which it is embedded and survives rescission

or modification absent a "clear and specific waiver" directed to the arbitration clause itself. The September 2022 Terms contained no such specific waiver—they made no reference to arbitration whatsoever. Moreover, the forum-selection clause in the September 2022 Terms can be harmonized with the arbitration clause under settled precedent, and the district court erred by treating the former as superseding the latter.

*Third*, even if there was a legitimate dispute about the impact of the September 2022 Terms and whether their mere existence overrode the parties' earlier and binding agreement to arbitrate, the May 2022 Terms incorporated the ICDR Rules, which expressly delegate questions of arbitrability—including the enforceability and validity of the arbitration agreement—to the arbitrator. Plaintiff's modification argument is a challenge to the enforceability of the arbitration clause to which he had agreed, which is precisely the type of threshold question the parties delegated to the arbitrator in the May 2022 Terms. The district court erred by resolving this delegated issue rather than sending it to the arbitrator.

## ARGUMENT

## I. STANDARD OF REVIEW

This Court reviews a district court's decision on a motion to compel arbitration under the FAA de novo to the extent it turns on questions of law. See Rose v. Mercedes-Benz USA, LLC, 167 F.4th 975, 978 (7th Cir. 2026).

The only issues on appeal therefore concern the legal consequences of Plaintiff's undisputed assent to the May 2022 Terms and the legal effect, if any, of the September 2022 Terms—terms as to which the record contains no evidence of assent. Those questions are reviewed de novo. Factual findings are reviewed for clear error, id., but the material facts underlying the district court's ruling here are undisputed.

## II. THE DISTRICT COURT ERRED BY REFUSING TO COMPEL ARBITRATION ON THE BASIS OF THE SEPTEMBER 2022 TERMS

A party seeking to compel arbitration must show (1) a valid agreement to arbitrate, (2) the dispute is within the scope of arbitration, and (3) the opposing party refuses to proceed to arbitration. *See Kass v. PayPal Inc.*, 75 F.4th 693, 700 (7th Cir. 2023). Whether a valid arbitration agreement exists is a matter of applicable contract law, *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 733 (7th Cir. 2002), and in the online context, courts ask whether the website

provided "reasonable notice" that the user's conduct constituted assent. *Domer v. Menard, Inc.*, 116 F.4th 686, 699 (7th Cir. 2024).

Once the moving party establishes a *prima facie* showing of an agreement to arbitrate, the burden shifts squarely to the opponent to produce actual evidence—not argument—creating a genuine factual dispute. *See Tinder*, 305 F.3d at 735. This Court has repeatedly emphasized that the evidentiary burden mirrors Rule 56: "[A] party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id.*; *see also Rose*, 167 F.4th at 978 (opponent must submit evidence akin "to that required of a party opposing summary judgment") (internal quotation omitted).

Critically, attorney declarations and arguments are not evidence. *See Matter of Morris Paint & Varnish Co.*, 773 F.2d 130, 134 (7th Cir. 1985) ("Arguments and factual assertions made by counsel in a brief, unsupported by affidavits, cannot be given any weight"). Likewise, unsupported denials in a brief cannot create a factual dispute. *Tinder*, 305 F.3d at 735.

Thus, where the opponent submits no declaration, no testimony or other evidence—only attorney argument—the movant's evidence stands

unrebutted as a matter of law. *See Tinder*, 305 F.3d at 735 (general denial insufficient); *Rose*, 167 F.4th at 978 (same).

Applying these well-settled precepts here, the district court's Order Denying Arbitration cannot stand; the Order should be reversed and vacated.

### A. Plaintiff Presented No Evidence That He Agreed to Such Terms

As a starting point, the district court correctly held that Plaintiff assented to the May 2022 Terms, including the arbitration clause contained therein. (A-4–5.) When Plaintiff purchased his ExpressVPN subscription, he clicked "Join Now" next to a conspicuous, bright-green, underlined hyperlink to the Terms. (*Id.*) As the district court opined—consistent with *Millar*—this provided reasonably conspicuous notice and constituted acceptance. (A-5.) That resolved the only contract-formation question properly before the district court.

Having found assent to the May 2022 Terms, the district court should have gone no further. Plaintiff presented no evidence disputing that finding; he offered only "one conclusory assertion" that he was not bound by "any version" of the Terms. (Pl.'s Opp. Br., D. Ct. ECF No. 48 at 4.) And far from

claiming he agreed to the September 2022 Terms, Plaintiff expressly *disavowed* any such agreement. (*Id.* at 8.) He submitted no declaration, no affidavit, no testimony, and no evidence suggesting he ever received, reviewed, or agreed to the September 2022 Terms. Nor did he present any evidence that the contractual prerequisites for modification of a "core term" under the May 2022 Terms—notice and continued use—were satisfied. The only evidence of contract formation in the record was Plaintiff's assent to the May 2022 Terms.

Under settled Seventh Circuit precedent, that should have ended the inquiry. Once ExpressVPN made a *prima facie* showing of assent, Plaintiff bore the burden of identifying "specific evidence in the record" creating a genuine factual dispute. *Tinder*, 305 F.3d at 735; *Rose*, 167 F.4th at 978. He failed to do so. And, neither unsupported statements in a legal brief nor allegations in a pleading can create a factual dispute. *See Matter of Morris Paint and Varnish Co.*, 773 F.2d 130, 134 (7th Cir. 1985); *see also Mitze v. Colvin*, 782 F.3d 879, 882 (7th Cir. 2015) ("[A]ssertions in briefs are not evidence").

Plaintiff's counsel's declaration cannot fill the gap. Counsel lacked personal knowledge of Plaintiff's interactions with ExpressVPN, and the declaration was silent on whether Plaintiff received notice of—or engaged

in any conduct that could constitute assent to—the September 2022 Terms. Under the Rule 56-like standard governing motions to compel arbitration, Plaintiff's counsel's declaration is insufficient and cannot be considered. *See Friedel v. City of Madison*, 832 F.2d 965, 970 (7th Cir. 1987).

Federal courts routinely compel arbitration where, as here, the non-movant offers only legal argument and unsupported conclusions rather than evidence of a genuine factual dispute. In *Wilhelm v. BAM Trading Servs.*, the court ordered arbitration even though the consumer submitted a declaration claiming she was unaware of updated terms; the court held her denial was "not sufficiently specific to create a material dispute for trial." 2024 WL 2274326, at *5 (N.D. Ill. May 20, 2024). Likewise, in *Tinder*, this Court held that a plaintiff's statement that she did not recall agreeing to arbitration could not overcome the defendant's evidence of assent. 305 F.3d at 735–36.

Courts also refuse to enforce updated online terms where, as here, the record contains no evidence of assent to the later terms. *See Barclay v. Icon Health & Fitness, Inc.*, 550 F. Supp. 3d 710, 723–24 (D. Minn. 2021) (no evidence supporting use after modification); *Saeedy v. Microsoft Corp.*, 757 F. Supp. 3d 1172, 1202 (W.D. Wash. 2024) (no evidence plaintiff received notice

of updated terms); *Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 290–91 (S.D.N.Y. 2025) (no evidence supporting modification as to one of several plaintiffs).

These cases underscore a consistent principle: even where terms permit unilateral modification, a court cannot enforce updated terms absent evidence that the non-movant actually assented through at least some affirmative conduct. The record here contains no such evidence, because Plaintiff did not present any. To the contrary, Plaintiff disavowed any such assent. Because the only established agreement was the May 2022 Terms, the district court should have applied those Terms and compelled arbitration. On this basis alone, the Order should be reversed and the parties should be directed to arbitrate.

### B. The Arbitration Clause in the May 2022 Terms Survived Any Subsequent Modification

Even assuming Plaintiff had presented evidence of assent to the September 2022 Terms, the arbitration clause in the May 2022 Terms would remain enforceable. That is because, under federal law, an arbitration clause is severable from the contract in which it appears and survives subsequent agreements unless the parties "clear[ly] and specific[ally]" waive or rescind

the arbitration provision itself. *See Edwards v. TikTok, Inc.*, 804 F. Supp. 3d 1049, 1053 (C.D. Cal. 2025); *see also United Steel v. TriMas Corp.*, 531 F.3d 531, 538 (7th Cir. 2008) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402 (1967)). A party seeking to avoid arbitration on the basis of a subsequent contract "need[s] to show that the alleged modification was directed to the arbitration clause itself." *TriMas*, 531 F.3d at 538 (cleaned up).

The September 2022 Terms do not come close to meeting this standard. They contain no reference to arbitration, no language purporting to repeal or waive the existing arbitration clause, and no indication that the parties intended to extinguish their prior agreement to arbitrate. Courts faced with similar silence have held that an earlier arbitration clause survives. *See Patten Sec. Corp. v. Diamond Greyhound & Genetics, Inc.*, 819 F.2d 400, 407 (3d Cir. 1987) (overruled in part on other grounds) (forum-selection clause lacking any reference to arbitration did not supersede prior arbitration clause); *Edwards*, 804 F. Supp. 3d at 1053 (updated online terms that contained a forum-selection clause, rather than an arbitration clause, did not displace earlier arbitration agreement where the updated terms did not clearly repeal it). Thus, Plaintiff's argument that the forum-selection clause

in the September 2022 Terms impliedly (i.e., silently) displaces the arbitration clause in the May 2022 Terms is unfounded and contrary to law.

Indeed, forum-selection and arbitration clauses are not inherently inconsistent. To the contrary, federal courts routinely harmonize them by treating the forum-selection clause as governing any court proceedings ancillary to arbitration, such as confirmation or enforcement of an award. *See Hanc & Brubaker Holdings v. NXT LVL Servs., LLC*, 2023 WL 1069854, at *2–3 (N.D. Ill. Jan. 27, 2023); *ValuePart, Inc. v. Farquhar*, 2014 WL 4923179, at *5–6 (N.D. Ill. Sept. 29, 2014); *ChampionsWorld, LLC v. U.S. Soccer Fed'n, Inc.*, 487 F. Supp. 2d 980, 988–89 (N.D. Ill. 2007). This is because, at a minimum, the FAA requires courts to compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *TriMas*, 531 F.3d at 536 (quotation omitted).

Here, there is no "clear and specific" waiver of the May 2022 "arbitration clause itself" and no language in the September 2022 Terms directed at that clause. Rather, there is an obvious way to harmonize the May 2022 arbitration provision with the later forum-selection clause.

Thus, even assuming Plaintiff assented to the September 2022 Terms, the district court erred in treating the forum-selection clause as superseding, rather than complementing, the existing arbitration agreement. The May 2022 arbitration agreement survived any subsequent modification and should have been enforced.

### C. The District Court's Decision Cannot Be Reconciled with *Millar*, Which Involved Interpretation of Identical Online Terms of Service.

Although Plaintiff seeks to minimize its relevance, *Millar v. Express Techs. Ltd.*, 2025 WL 4061252, at *1 (C.D. Cal. Nov. 25, 2025), is directly on point and underscores the error below. *Millar* involved the same defendant, the same May 2022 Terms, a nearly identical auto-renewal claim and the same plaintiff's counsel. *Id.* at *1. As here, the plaintiff argued he had not assented to the terms containing the arbitration clause. The court rejected that argument, holding that the May 2022 Terms were sufficiently conspicuous and that the plaintiff assented to them when signing up for ExpressVPN's service. *Id.* at *10–11.

The timing in *Millar* also mirrors this case. The plaintiff in *Millar* enrolled in a ExpressVPN subscription in early September 2022—when the May 2022 Terms were in effect—and was autorenewed in October 2022, *after*

the modified terms took effect. *Id.* at *1. The California federal court enforced the same May 2022 arbitration agreement at issue here, notwithstanding the later modification. The district court here should have reached the same conclusion.

The only meaningful difference between the two cases is the outcome. The district court in *Millar* applied the governing legal principles, which are consistent between the Seventh and Ninth Circuits, and enforced the May 2022 arbitration clause, leaving the consequence of the terms of use update for the arbitrator to resolve. But the district court here skipped the required analysis, presumed assent to later terms without evidence, and declined to enforce the same arbitration agreement. The *Millar* analysis was correct under binding law and confirms that the May 2022 Terms govern and that arbitration should have been compelled.

## III. In the Alternative, the District Court Lacked Authority to Decide Whether the September 2022 Terms Were Enforceable Because the Parties Delegated That Question to the Arbitrator

The FAA permits only limited judicial involvement where an arbitration clause is at issue. Where, as here, an arbitration agreement encompasses a broad delegation provision, only the threshold question of whether "the parties agreed to arbitrate their disputes" is for the court.

*Harris v. W6LS, Inc.*, 171 F.4th 957, 961 (7th Cir. 2026). Here, there is no genuine dispute that Plaintiff assented to the arbitration provision in the May 2022 Terms, and, in doing so, assented to an arbitrator, rather than a court, deciding whether his claims were arbitrable.

That is because the parties may agree to delegate questions of arbitrability—including whether the arbitration agreement "is enforceable or whether the disputes at issue are within the scope of the agreement"—to the arbitrator. *Harris*, 171 F.4th at 961. The party seeking to compel arbitration must provide "clear and unmistakable evidence" that the parties intended such a delegation. *Id.* (quoting *Coinbase, Inc. v. Suski*, 602 U.S. 143, 149 (2024)). Here, the May 2022 Terms incorporated the ICDR Rules, which expressly provide that the arbitrator decides "objections with respect to arbitrability" and the "scope[] or validity of the arbitration agreement(s). *International Dispute Resolution Procedures*, International Centre for Dispute Resolution at 28 (March 1, 2021). The May 2022 Terms' incorporation of the ICDR Rules, including this express delegation provision, constitutes clear and unmistakable evidence that the parties agreed to delegate arbitrability to the arbitrator. *See Nandorf, Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 410 F. Supp. 3d 882, 888 (N.D. Ill. 2019) ("other federal

appellate courts and courts within this district have held that incorporating AAA Rules within a contract also constitutes clear and unmistakable evidence to delegate arbitrability to arbitrators"); *Schroder v. Teufel*, 2017 WL 5569758, at *3 (N.D. Ill. Nov. 20, 2017) (parties delegated arbitrability where agreement referenced AAA's Commercial Arbitration Rules, which stated that "[t]he arbitrator shall have the power to rule on . . . any objections with [] respect to the existence, scope, or validity of the arbitration agreement"). Plaintiff did not contend otherwise before the district court.

Plaintiff's observation that ExpressVPN subsequently modified the Terms of Service to remove the arbitration clause does not alter this analysis. Plaintiff's argument in this respect is not a challenge to initial contract formation—it is an assertion that the arbitration clause in the May 2022 Terms is no longer *enforceable* by virtue of a later unilateral amendment. That is precisely the type of validity and enforceability question the parties delegated to the arbitrator. *See Coinbase*, 602 U.S. at 149 (delegation covers disputes about enforceability and applicability). The ICDR Rules delegate to the arbitrator all "objections with respect to . . . [the] validity" of an arbitration agreement, and Plaintiff's contention that the May 2022 arbitration clause was rendered unenforceable by subsequent modification

is plainly a challenge to validity. The district court was therefore required to send this question to the arbitrator rather than resolve it itself.

By concluding that the September 2022 Terms superseded the arbitration clause in the May 2022 Terms, the district court skipped this crucial antecedent inquiry. Once the court found that Plaintiff assented to the May 2022 Terms—which contained both an arbitration provision and a clear delegation clause through incorporation of the ICDR Rules—it was required to compel arbitration and leave all remaining questions, including the effect of any alleged modification, to the arbitrator. To hold otherwise would permit a party to circumvent a valid delegation clause simply by asserting that the delegating contract was later amended—an end-run that would render delegation clauses meaningless whenever one party claims the underlying agreement was modified.

## CONCLUSION

For the foregoing reasons, the district court's order should be vacated and the matter compelled to arbitration.

Dated: May 11, 2026

Respectfully submitted,

*/s/ Lauri A. Mazzuchetti*
Lauri A. Mazzuchetti
Ryan M. Dunn
KELLEY DRYE & WARREN LLP
7 Giralda Farms, Suite 340
Madison, NJ 07940
Tel.: (973) 503-5900

*Counsel for Defendant-Appellant Express Technologies Ltd.*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENT**

I hereby certify that this brief complies with the type-volume limitations of Fed. R. App. 32(a)(7)(B) and Seventh Circuit Rule 32(c) because it contains 5,361 words, excluding the parts exempted by Fed. R. App. P. 32(f). I further certify that this brief complies with the typeface requirements of Fed. R. App. 32(a)(5) and Seventh Circuit Rule 32(b) and the type-style requirements of Fed. R. App. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word and 14-point Book Antiqua font.

*/s/ Lauri A. Mazzuchetti*
Lauri A. Mazzuchetti

*Counsel for Defendant-Appellant Express Technologies Ltd.*

## CIRCUIT RULE 30(d) STATEMENT

Pursuant to Circuit Rule 30(d), counsel certifies that all materials required by Circuit Rule 30(a) and (b) are included in the Appendix.

*/s/ Lauri A. Mazzuchetti*
Lauri A. Mazzuchetti

*Counsel for Defendant-Appellant*
*Express Technologies Ltd.*

## CERTIFICATE OF SERVICE

I, Lauri A. Mazzuchetti, hereby certify that on May 11, 2026, I caused the foregoing Brief and Appendix for Defednant-Appellant to be electronically filed with the Clerk of Court for the United States Court of Appeals for the Seventh Circuit using the CM/ECF system, which constitutes service on all counsel of record, registered filing users, pursuant to Federal Rule of Appellate Procedure 25(c)(2) and Circuit Rule 25(a).

*/s/ Lauri A. Mazzuchetti*
Lauri A. Mazzuchetti

*Counsel for Defendant-Appellant*
*Express Technologies Ltd.*

# APPENDIX

**APPENDIX**
**TABLE OF CONTENTS**


| Docket Entry | Description | Page |
|---|---|---|
| 58 | Memorandum Opinion and Order of the Honorable Jorge L. Alonso, Filed March 30, 2026 | A-1 |

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Charles Greenwood, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 25 C 8121 |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| Express Technologies LTD. f/ka Express VPN International LTD., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant Express Technologies offers a subscription for its virtual private network ("VPN") that automatically renews every twelve months. R. 34 ¶ 1. Plaintiff brought this putative class alleging that Express engaged in deceptive practices to trick him into automatic renewals. *Id.* As alleged, Plaintiff enrolled in a one-year subscription in May 2022 without knowing that the subscription would automatically renew, and Express automatically renewed the subscription in May 2023 and in May 2024 without Plaintiff's knowledge or permission. *Id.* ¶¶ 91–95. Express now moves to dismiss on three grounds. R. 42. First, that the Court lacks specific personal jurisdiction over Express. Second, that the Terms of Service compel arbitration. And third, that Plaintiff failed to state a claim. The Court heard oral argument on March 26, 2026. For the reasons stated below, Express's motion to dismiss is denied without prejudice.

## Discussion

### 1. Personal Jurisdiction

As the Seventh Circuit has explained, "[t]here are various formulations of the standard for establishing specific personal jurisdiction, but they may be condensed to three essential requirements: (1) the defendant must have purposefully availed himself of the privilege of

conducting business in the forum state or purposefully directed his activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012) (citations omitted).

Regarding the first element, a defendant has "purposefully established sufficient minimum contacts to subject it to personal jurisdiction" in the forum state if the defendant "intentionally served" that market. *Logan Productions, Inc. v. Optibase, Inc.*, 103 F.3d 49, 53 (7th Cir. 1996). To answer whether Express "intentionally served" the Illinois market, the Court must "examine [Express's] contacts with [Illinois]." *Id.* This includes contacts forged after Plaintiff initially signed up for the VPN in May 2022. *Id.; see also Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 106 (1987) (considering total sales of product within the forum state in the four years following the sale giving rise to the plaintiff's injury).

Plaintiff alleges more than enough to establish that Express intentionally served the Illinois market. Express has been running sponsored advertisements on Google with the keyword "Chicago" since at least March 2022. R. 34 ¶ 25. By way of example, the complaint presents an archival screenshot from August 2023 of a Google query for "chicago vpns" where Express's website appears as the third search result and the summary of the website states: "Best Chicago VPN (Get a Chicago IP Address Fast). The best VPN for Chicago is ExpressVPN." *Id.* ¶ 26. Since at least June 2022, Express's website has included a webpage that specifically targets Chicago consumers and is titled "Best Chicago VPN servers." *Id.* ¶ 18. This page includes a question: "What is the best VPN for Chicago?" *Id.* ¶ 20. And answer: "The best VPN for Chicago is ExpressVPN, with nextgen 10-Gbps servers and server locations in 105 countries around the world. Select our Chicago server location or let ExpressVPN's Smart Location feature

automatically choose the best server for your network." *Id.* The page also includes a heading which states: "Stream your favorite Chicago sports teams with a VPN" and "follow your favorite Chicago teams, including the Bears, Cubs, White Sox, Bulls, and Blackhawks." *Id.* ¶ 22. Additionally, since December 2023, Express's website has included a webpage that specifically targets Illinois consumers and is titled "Best VPN for Illinois." *Id.* ¶ 16. The page contains subheadings with titles such as "How to get an Illinois VPN," and "Download an Illinois VPN for all your devices." *Id.* Finally, as alleged on information and belief, Express generates over $3 million in annual revenue from Illinois alone, based on an estimated over 34,000 Illinois subscribers. *Id.* ¶¶ 30–33.

At oral argument, Express argued that the above facts are not relevant to establishing specific personal jurisdiction. Express argued that the Court should consider only the specific webpage where Plaintiff submitted his credit card—which does not mention Illinois or Chicago—and disregard Express's advertisements and other pages on Express's website that expressly targeted both Illinois and Chicago.

It's true that for the Court to exercise specific personal jurisdiction, the defendant's "suit-related conduct must create [the] substantial connection" with Illinois. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014) (citations omitted). But Express draws too narrow of a circle when defining "suit-related conduct." Courts look at the "overall relationship between [a defendant], [the forum state], and the litigation." *Logan Productions*, 103 F.3d at 53. And Express has "thoroughly, deliberately, and successfully exploited the Illinois market" for the purpose of recruiting consumers to sign up for their VPN service, exactly as Plaintiff did here. *See uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 427 (7th Cir. 2010). Express's advertisements and website pages directly targeting Illinois and Chicago constitute suit-related conduct that establishes sufficient minimum contacts.

Regarding the second element, Plaintiff's alleged injury arose from Express's extensive scheme to exploit and sell to the Illinois market. And regarding the third element, Express briefly states that "jurisdiction would be unreasonable because it is a [company based in the British Virgin Islands] with no offices in the U.S." R. 43 at 13. But once "minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Asahi*, 480 U.S. at 114. And "there is no question that Illinois has a strong interest in providing a forum for its residents to seek redress for injuries suffered within the state inflicted by out-of-state actors." *Liu v. Li*, 2026 WL 184539, at *8 (N.D. Ill. Jan. 23, 2026).

For the reasons stated above, the Court finds that it has personal jurisdiction over Express. The Court thus turns to the remaining issues in dispute.

**2. Terms of Service**

In May 2022, when Plaintiff enrolled in a one-year subscription for Express's VPN, Plaintiff agreed to the May 2022 Terms of Service on Express's website. In his response brief, Plaintiff provides just one conclusory assertion in which he "disputes that he was bound by any version of the [Terms of Service]." R. 48 at 14. Beyond this sentence, Plaintiff fails to substantively contest that he accepted the May 2022 Terms of Service.

Where assent to an online contract is passive, as in this case with Express's website, "a court will recognize an enforceable contract only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Domer v. Menard, Inc.*, 116 F.4th 686, 695 (7th Cir. 2024) (citations omitted). Here, when Plaintiff signed up for his VPN subscription with Express in May 2022, he

was required to click a "Join Now" button as part of a checkout flow that was next to a clearly visible, bright green, and underlined "Terms of Service" hyperlink. R. 31-1 at 2. Having reviewed the screenshot of the webpage at R. 31-1, the Court finds that hyperlink was reasonably conspicuous and that Plaintiff unambiguously manifested his assent when he clicked "Join Now." The Court notes this identical issue was raised in another class action against Express brought in the Central District of California, and that the California court reached the same finding based on the same webpage. *See Millar v. Express Techs. Ltd.*, 2025 WL 4061252, at *11 (C.D. Cal. Nov. 25, 2025) ("In addition to the contrasting color, the court observes that the hyperlink is on a page that is not otherwise crowded with text, is not in exceedingly small font, and is not otherwise so visually obscured that would render it not reasonably conspicuous.").

The May 2022 Terms of Service contained a mandatory arbitration provision. R. 31-2 at 11–13. But they also contained a unilateral modification clause as follows:

> ExpressVPN may update the Terms from time to time without notice. If you continue to use ExpressVPN's Services, Content, Site, Apps, or Software after these changes take effect, then you agree to the revised Terms. The current version of the Terms is available on the Site. You understand and agree that it is your obligation to review these Terms from time to time in order to stay informed on current rules and obligations. Notification on any core changes to the Terms will be provided to subscribers through an email message or update to the Site. Your use of the Content or Services following the changes to these Terms constitutes your acceptance of the changed Terms.

*Id.* at 2–3. In October 2022, Express updated its Terms of Service and removed the arbitration provision. *See* R. 49-3. Plaintiff argues that per Express's own modification clause, the October 2022 Terms of Service superseded the May 2022 Terms of Service and as such, that Plaintiff is no longer subject to mandatory arbitration. R. 48 at 14. In response, Express argues that the arbitration clause was not modified because the modification clause required that "[n]otification on any core

changes to the Terms will be provided to subscribers through an email message." R. 52 at 9 (citing the May 2022 modification clause). But Express's argument fails because Express quotes its own contractual language out of context and ignores the rest of the sentence which states that a notification may also be made through an "update to the Site." R. 31-2 at 2–3. And there is no dispute that Express updated its website. The Court finds that Express made unilateral modifications to its terms and that Express is bound by these modifications pursuant to its own unilateral modification clause. As such, the Court finds that the October 2022 Terms of Service superseded the May 2022 Terms of Service and that the parties are no longer subject to a mandatory arbitration provision.

Critically, however, the October 2022 Terms of Service contained a forum selection clause which requires that any litigation "arising out of or relating to this Agreement or the use of the Services shall be finally settled by the applicable Courts located in Tortola, British Virgin Islands." R. 49-3 at 8. Following October 2022 and through the present, as Express has made additional updates to its Terms of Service, the Terms have maintained this same forum selection clause. *See* R. 49-4 at 8; R. 49-5 at 10. As such, the Court finds that although the parties are no longer bound by a mandatory arbitration provision, the parties are bound by the forum selection cause.

The Court notes that the forum selection clause is potentially dispositive of the Court's ability to hear this case. The Court thus orders further briefing on the impact of the forum selection clause. Because this issue is potentially dispositive, the Court will refrain from considering whether Plaintiff failed to state a claim until it determines the appropriate forum.

## Conclusion

For the reasons stated above, the Court orders further briefing on the impact of the forum selection clause as follows: Plaintiff shall raise any objections to the forum selection clause by 4/7/26, Defendant shall respond by 4/14/26, and Plaintiff shall reply by 4/21/26. Alternatively, the parties may file a stipulation of dismissal if Plaintiff agrees to dismiss based on the forum selection clause. Or a joint status report if Defendant agrees to waive the forum selection clause. Express's motion [42] to dismiss is denied without prejudice pending consideration of the forum selection clause.

**SO ORDERED.**

**ENTERED: March 30, 2026**



**HON. JORGE L. ALONSO**
**United States District Judge**